Good morning. My name is Stephen Manning, and at council table with me is Jessica Buell, and we represent Ms. Ortiz. I'd like to reserve three minutes, at least three minutes of my time for rebuttal. If you could watch the clock, that would be helpful. I certainly will. Thank you. There are two things I'd like to do with my time this morning. So the first is I'd clearly like to address the jurisdictional question that the court has raised and the government has raised, and I'd like to explain why that question resolves in our favor. The second thing I'd like to do is explain why Mr. Ortiz has a statutory right to file for asylum, not just the lesser form of relief known as withholding of removal. So just a little context. So Mr. Ortiz is from Mexico. He was ordered removed in 2001 for being president of the United States without admission or parole. So he was unlawfully here. He was deported. He reentered the United States unlawfully. And then in 2010, he came to the government's attention. He was picked up for DUI. And the government said, well, look, ICE, the Department of Homeland Security, said, you're here. There's this order. We're going to, under our power, under Section 1231, we're going to order you removed. Mr. Ortiz said, well, look, I'm afraid to go back to Mexico because I don't want to be killed by the drug cartels, and I'd like to file for asylum. And there's a regulation that says, no, he can't do that because he's a reinstated alien. So there's a reinstatement regulation that says, no, you don't get to file for asylum. He wants to challenge that regulation because he thinks the asylum statute is clear. So he filed a petition for review of that reinstatement order. And here's where the jurisdictional question comes in. After he filed his petition for review, there's still stuff going on before the agencies right now. It's called a reasonable fear screening. So there's still some procedure that's happening. And so the question is, is the reinstatement order that he's seeking review of, is that a final order of removal defined in the statute? And we say it is, yeah. We say it is. And it is because the plain language of the statute says so. So the Ninth Circuit has held that the statute in question is 8 U.S.C. 1101-847. And the Ninth Circuit has held that it is a clear and unambiguous statute. And what it says is it defines final order of removal. And it says one of two conditions must be met, not both, just one or the other. We meet the second condition. The second condition says that if the time period has elapsed for someone to seek administrative review of a removal order, that order is final. The reinstatement order, there's no administrative review of that order. It was final the moment it was served. So we satisfy the second condition of the statute. But if we say this is final, isn't there another issue created for your client? Would it mean that there's no judicial review of the withholding of removal or of the asylum later on? I mean, if this is final now, how would he get that kind of relief if it was needed later? So there's nothing. So there's two separate issues. And so he's actually wants to file for asylum, but he's not yet been able to file for asylum. So there's this withholding process, reasonable fear screening. So assuming that works out favorably to him in all respects and he gets reasonable fear, they say, okay, great. You can file for withholding. And let's assume they deny withholding. And he then wants to get review of the substance of that decision. He could file a petition review at that time. The Ninth Circuit's case in Lee, which is a case that I missed, the government has cited in the 28-J, and I'm very glad they have, is very instructive on this point. In that case, they described, you know, we might ‑‑ in that case, there was a remanded, the board had remanded the case for security checks, I think. And there was a ‑‑ and they had granted partial relief but denied relief. And so the question was, does the Ninth Circuit, can they hear this, do they have jurisdiction over this partial denial? And they said, well, yes, we can, because if we don't, then we're going to create a litigation trial. And it's okay if we have to hear this case twice. It's not an onerous burden on us. And that we can hear this part of the challenge now, and then later when that other part is complete, we can hear that. If in order to ‑‑ there's a line of cases that says that as long as there's some impediment in between, before the Board of Immigration, there's something still happening there. So there's an impediment to the actual removal of Ms. Ortiz, that it's not a final order. Those cases, so several cited in the reply brief, the government's, those cases, we do not argue with those cases. Those cases are fine. But those are all cases that come out of the conventional removal process. So those are all 1229, USC 1229 orders. This is not a 1229 case. This is a 1231 case. So the order that was issued here was issued by the Department of Homeland Security. And we are challenging a regulation promulgated by the Department of Homeland Security. The 1229 orders, those are orders that are issued by the Department of Justice through its immigration court system. We are not challenging. So the board is not going to review any reinstatement process. So now, so those, sorry, if I could just walk that sentence back just a bit. Okay. There's, those 1229 cases, they're informative. They're instructive. But they're not dispositive here. They do not hold, nor do they explain how or why the plain language of the statute should not apply. So those cases interpret 1101A47 and put some nuances in it. They create that impediment to construction. But they do not apply with, they don't explain what you do with a reinstatement case, the 1231. And because they don't explain what they do with the 1231, we've got a time limit. We've got a jurisdictional, we've got to file within 30 days of the entry of a final order removal. If the plain language of the statute says we've got to do it, and the Ninth Circuit has held that is clear and unambiguous, and we satisfy that second criteria, then we have 30 days to do so. But if later on there's another decision in the case that does not impact this question, we can seek review of that. I'm not, at this point in time, I think it's a complicated question whether or not it would be a, there's different things that could happen in the reasonable fear screening. If the immigration judge affirms the asylum office and says, no, you don't have reasonable fear, that's the end of the matter for the, we never go to the board. There's no administrative right. At that point in time, the plain language of the 1101A47 doesn't tell us we can come to this court. At that point in time, where is our final order of removal? So this has to be our final order of removal. And later on there may be another agency decision to review. And Lee says that's okay, that that's not an onerous burden to put on the court. And we requested a stay of appellate proceedings because we thought it would be more judicially efficient to allow these other proceedings to take place. The motion was denied. Lee describes that that's okay to do. You can stay appellate proceedings if it's going to be judicially efficient, but it's not required. If Mr. Ortiz's removal order became final when it was reinstated, as I guess you're arguing, then the 30-day deadline for him to petition this court, wouldn't it have expired in October of 2010? Yes, and he filed timely. So he filed before that removal within the 30-day period. But if he tries to petition, I guess, I mean, this court, which I guess you're trying to do to review the IJ's decision affirming the negative reasonableness, fear determination, or denial of relief, his petition would be dismissed as untimely, wouldn't it? No, we would not. And I apologize, there's so many permutations on what could happen. Whether or not we would be seeking review, say we want to seek, say the court says, yeah, we've got jurisdiction here because this is a final order, and later on what happens before the agency, then we want to come back to the court. I don't know that we would actually be seeking review under 1252, because I don't know if we would actually be seeking review of a final order of removal. Instead, we just may be seeking petitioning for review of an agency decision, and that review process may take place under the APA or some alternative means, but not necessarily a final order of review of a final order of removal. The board, different than the 1229 cases, the 1229 cases, the board can undo a removal order, because the board's, that's the Department of Justice, they can issue those orders, that's the Attorney General. For 1231, they can't, the board can't undo the reinstated order. The 1231 order is a Department of Homeland Security order. Well, I guess, I'm just concerned, and I don't know if this is just restating in a different way what you've already said, but it seems like you concede by claiming that the denial of Mr. Ortiz's reasonable fear claim would not be directly appealable to this court. I think you just said that. I don't think you cite any authority for that, but you say that. So an appeal to a district court would likely be dismissed for lack of jurisdiction, it seems like, under the REAL ID Act. And so if that happens, because, you know, holding that the reinstated order is already final would make it impossible, it seems like for this court to review any legal challenge to administrative actions taken in the later process, including the denial of holding of removal. So just, again, it doesn't seem like your interpretation could be correct. With due respect, I don't see how the alternative interpretation could be correct unless there's new law established. So there is a way, right now, the present jurisprudence of the Ninth Circuit mandated that we file within 30 days of that reinstated order, because the 1229 case law does not discuss what to do with the 1231 order. If this court were to interpret the 8 U.S.C. 11-01-47 differently to provide for that, so that Mr. Ortiz could seek review of both his challenge to the DHS regulation and the merits of any decision on his withholding claim, then his, you know, we've got a suspension clause issue. We have a right to challenge, do an as-applied challenge on the Morales-Esquire, which says we get to challenge this regulation, so we've got to have a means to do it. And if we can do that later, then his judicial review rights are preserved. But right now the law does not provide for that. It also creates a litigation trap. So most applicants – so if – it becomes really complicated by going that route, though. So I'm not – I'm suggesting our route. It's a bright-line rule. It's clear. It protects everyone's rights, provides for simple administration. It also adheres to the plain language of the statute. The court can walk away from that plain language and create a more nuanced interpretation. But by creating that nuanced interpretation, there's a lot of permutations that need to be considered, and it can create a litigation trap, which was one of the issues that Lee was concerned about. And because most applicants who are challenging reinstated orders are going to be pro, say, detained individuals, and how those individuals are going to determine when do my 30 days start, it's going to be very difficult when there's not a bright-line rule. And if you want to reserve – You only have a couple of minutes. You only have a couple of minutes left, and I want to just ask you this. Assume we get over the final order of removal problem. We say we can entertain your petition for review here. We still have a problem, don't we, that your client is under a reinstatement of removal charges and treating illegally and is therefore statutorily ineligible for asylum. So even if we get by the – when you have a final judgment effect, your client's not eligible for asylum under the statute. Isn't that right? I disagree respectfully. The asylum statute, Section 208, is unique within the entire Immigration and Nationality Act. It is completely comprehensive. It is completely exhaustive. It says who can qualify, who's eligible, ineligible. It talks about the minutia. It talks about where you have to file. It talks about work authorization. What about 1231A5? Exactly. And if I could just have one moment, and I will address that. So 208, 1158, 8 U.S.C., it does not – it says that Mr. Ortiz is eligible because he is any alien and irrespective of his status as a reinstated alien. So that's the language of 208. There's nothing in the statute at 1231 that says that those – that that language should not apply. So 1231 does not – You know, it seems pretty clear to me that the Attorney General finds that an alien has re-entered the United States illegally after having been removed. The alien is not eligible and may not apply for any relief under this chapter. And the alien shall be removed under the prior order. I mean, I don't know how you get around that. Doesn't that seem clear to you? If you read that by itself, sure. But you can't read that by itself. You have to look at 208. And both statutes were amended at the very same time. In 208, Congress says any alien irrespective of such alien status. And so – Yeah, but this is a more specific statute that deals with aliens who re-enter after having been reinstated or having been removed. This is the specific. Wouldn't this control over a general statute? The asylum statute, in my opinion, and I think the text demonstrates this, is actually the more specific statute. It is the one that is detailed. It is the one that applies – it has – it is the one that – You're saying that the section that deals specifically with reinstatement of removal orders against aliens illegally re-entering is not the specific statute that covers an alien who was re-entered after removal? Only in relation to the asylum statute. No, the asylum statute is far more – is the particular specific statute. And – Okay, I get your point, I think. Thank you. Thank you. Thank you. Ms. Singer? Yes. Good morning, Your Honors. May it please the Court. Good morning. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. It's the government's contention that the Court should dismiss the petition for review for lack of jurisdiction because the restatement order is not a final order. This Court is limited by statute to reviewing only final orders of removal, and the reinstatement order in this case is not final for several reasons. First, the reasonable fear proceedings remain pending, and depending on how those proceedings go, which can take many courses, can affect the ability of the government to remove Mr. Ortiz. In the reasonable fear proceedings, he's seeking withholding of removal and cat protection, and those forms of protection are mandatory. So if he were found to meet the criteria, the government would be restricted from removing Mr. Ortiz. So whether or not Mr. Ortiz could be removed to Mexico at this point is entirely dependent upon the outcome of the reasonable fear proceedings and whether he meets the criteria for withholding of removal and cat protection. Is there some time frame that something needed to be decided, and it's been way beyond the time frame? The regulations do say that proceedings should be done within 10 days, and review of an asylum officer's decision should be done within 10 days. And how long has it been? It's been, I want to say, a little bit over a year, but he did have an initial interview with the asylum officer two months after the reinstatement order, and he has been seen before an immigration judge on a previous occasion. According to the DHS office in Portland, they are really backlogged, and that would account for the delay, but he has been seen, and he's unfortunately not scheduled to be seen again until next summer. But because of this exceptional circumstance, and the reason that it's taking this long shows that it's not a reasonable, or that it's not a final order because depending on how those proceedings unfold before the immigration judge, affects whether or not Mr. Ortiz can be removed. Well, play it through for me then. Let's say he doesn't get a favorable result. What happens to him? The asylum officer already determined that Mr. Ortiz did not have a reasonable fear. So right now, that decision is pending before the immigration judge, and if the immigration judge agrees with the asylum officer that Mr. Ortiz does not have a reasonable fear, then that determination is sent back to the Department of Homeland Security as there's no appeal, and it's the government's position that at that point, that order becomes a final order from which Mr. Ortiz could petition, from that concurrence of no reasonable fear, petition for review at that point, and then get review of the reinstated removal order and any other. And challenge asylum at that time? I mean, they're making an argument, you just heard the exchange right now, that they have, should be able, or would like to pursue that he is covered by the asylum statute that any person can challenge or try to get asylum. Notwithstanding, I think the argument that Mr. Ortiz is making is notwithstanding that other provision that says if you're under reinstatement removal, you're not eligible for asylum. So would he be able to argue that or appeal that or challenge that at that time? Yes, and that also plays into the point why the petition for review right now is premature, because he's saying that the regulations preclude him from applying for asylum, but those regulations and the reasonable fear process has not played itself out yet. So he hasn't actually been denied yet his ability to apply for asylum as he's not been before the immigration judge. So if the immigration judge were to concur with the asylum officer's negative fear determination at that point, it's the government's position that at that point, it would be a final order. He could petition this court for review, seek review of the Reed Statement order, raise the issue of asylum. I think that's the reason they're challenging that now, is because they think they might be precluded from challenging it later, and you're saying that's not the case. The government's position is no, he would not be precluded from challenging that later, that if the immigration judge were to concur, he could appeal. It would be sent back to DHS, and that would become a final order. I mean, this whole process shows why that order is not final, because the immigration judge also could disagree with the asylum officer and say, yes, he does have a reasonable fear, and then at that point, he could apply for withholding of removal and cap protection, and then go through the channel of immigration judge review, board review, and then petition for review for a potential board decision up to this court. At that point, he could raise the asylum issue in the underlying Reed Statement order. Suppose he's granted, when all this plays out, suppose he were granted withholding of removal, would he then be able to challenge the asylum denial? If he were granted withholding of, yes, Your Honor. If he were granted withholding of removal, that would be before the immigration judge, and because the Reed Statement order, there's no administrative appeal, that order would still be intact, and he could appeal from the immigration judge's withholding of removal, assuming that the Department of Homeland Security wouldn't appeal that grant, and at that point. Well, where would the final order of removal be in that circumstance? The final order would come after the immigration judge granted withholding of removal, and after the time for appeal to the board, if DHS did appeal that order, then that order would become final, and if Mr. Ortiz so choose, he could appeal from that order to challenge the underlying Reed Statement order, and at that point also potentially raise his asylum. That's a final order of removal, even though he's not being removed? The grant of withholding, even though the immigration judge has precluded from passing on the merits of the reinstated order, if the immigration judge finds that he's eligible for withholding, it somewhat assumes the fact that he's removable to begin with, so at that point, that order would be final, and Mr. Ortiz could petition for review from that order after the time for appeal to the board has expired, if DHS did appeal that order. So he would be able to seek review of the underlying Reed Statement order and raise his asylum challenge at that point, if he so wished. Further, the Reed Statement order is backing up. Mr. Ortiz essentially agrees that the order or concedes that the order is not final and that he filed a motion to hold, to stay appellate proceedings, and in his motion he said that the proceedings should be stayed because judicial review at this point, depending on what happens later, depending on how the reasonable fear proceedings play out, that could greatly impact even the need for judicial review or the scope of judicial review. So he's essentially conceding that the PFR at this point is premature. Well, Ms. Singer, what about the argument that was raised by Mr. Manning about the Lee case? His interpretation of the Lee case is sort of his background in explaining why they were seeking a stay for judicial economy, basically, I understand. But he's saying, listen, if we follow Lee and the reasoning in Lee, there's actually sort of two periods of time. It is final now. We can take a look at it and then be sent back, and then the other part when the IJ finishes the review and makes whichever decision, upholding or overruling it, we can then review at that time, if somebody petitions for review and goes through the exhausting of the administrative remedies. What is your response to his interpretation of Lee? I think the Lee case, the main concern the court had was that if they didn't review the asylum denial then, if the fingerprints would reveal no new information, then the order granting withholding of removal and CAT wouldn't be appealable, and then at that point he would have lost his right to appeal the denial of asylum. So I think that the concern was losing one's right to petition. And here I don't think that concern is present because however the reasonable fear proceedings play out, there's always the possibility of petitioning from review from that decision and getting review of the underlying removal order or the underlying reinstatement order and issues to asylum and what other review there is available to him at that point. So concerningly I don't think it's present here because there's always the opportunity to seek review, however the reasonable fear proceedings play out. Is there any distinction because it's a 1230 line case versus a 1229, 1231 versus 1229, the distinction Mr. Manning was trying to draw? Granted the reinstatement proceedings are an expedited proceeding and the language in the statute regarding final orders really only, I guess, discusses immigration judge orders and board affirmances of those orders, so the reinstatement is kind of not dealt with very well within the statute, but in terms of finality, those principles of finality apply equally to the traditional removal process and the reinstatement process. Okay, because I understand what he's arguing and maybe I misunderstood it. 1231, it's issued by the Homeland Security, not DOJ, and it's not reviewable by the board unless it's appealed by Homeland Security? The underlying reinstatement order, there's no administrative appeal, so there's no review by the immigration judge or the board, but because there's no administrative appeal doesn't make it final because this court has jurisdiction to review a reinstated removal order. So simply because there's no administrative, I mean that's the point of these reinstated removal proceedings is to have expedited removal. So because there's no administrative appeal doesn't make it final. It just means that there's no administrative. So that level is basically taken out. Exactly, but this court still has the ability to review it because it's a final. It would be final then. You were talking about finality, and I guess I just had some question in reading the briefs on reconciling your argument that was in the briefs that the removal order does not become final until DHS can execute it. With cases where we have held that there is a final order, where DHS had no power to execute the alien because removal was withheld or deferred. So how do you reconcile that? So it's our position that it's not a final order because DHS can't execute it, and DHS has indicated to our office that it does not and will not remove aliens while these reasonable fear proceedings are pending. And the whole point of the reasonable fear proceeding is to make sure that the U.S. follows their obligations under international law, so as not to remove an alien who might be persecuted or tortured in another country. I mean, that protection, the government cannot remove an alien under those circumstances. So to find it to be a final order would essentially mean that that order would be executable, which means DHS could act on the order of removal. But while these withholding and CAT proceedings remain pending, then it's kind of a limbo because then they couldn't really remove Mr. Ortiz because if they did so and he did have a reasonable fear of persecution or torture, then it would be in contravention of obligations under international law to removing aliens to countries where they would be persecuted or tortured. Okay. If there are any other questions as to the finality, I'll just briefly address the issue of asylum. I think the reinstatement statute is pretty clear that aliens under a reinstated removal order  Asylum is relief. Asylum confers benefits. You can adjust status, become a United States citizen, remain here permanently, get derivative benefits for family members. And when Congress enacted the reinstatement statute or amended it to include illegal entrance with reinstated removal orders, it did so because it wanted to address the problem of illegal reentrance and deter frequent immigration violators. And to allow Mr. Ortiz to apply for asylum would essentially nullify the reinstatement statute and go against the will of Congress in reinstating it as it would confer these great benefits when it was meant to carve out those benefits. So if there are no more questions. Thank you. Thank you. Thank you. I think you're out of time, but if you want a minute to respond. Very brief. Two things. One, right now there is possibility. So the reinstatement statute 1231 says no relief. Well, that's not true, actually, because you can get withholding of removal. So that's part of what Mr. Ortiz, there's a regulation that says we can give you withholding. Withholding is a benefit. If you get a work permit, you get free from detention. So the idea that the statute says no relief is not how it's interpreted, that there is broader. We've got international agreements with covenants. We have the asylum statute. So it's not as the asylum statute is actually the more specific statute. The second point is if we have to wait to take our challenge, that's okay, so long as we have law that allows us to do so, because right now the law does not allow us to do so. So if we do not bring this challenge now, our 30-day mandatory jurisdictional timeline has elapsed. And there's no law, there's no jurisprudence that says that we can do it later. And so if the court says wait, I would ask the court to give us the law that allows us to wait. Thank you. Thank you. Thank you. Thank you both very much. The case is submitted.
judges: Kobayashi, Silverman, Murguia